IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: : CHAPTER 7
:
KEYSTONE SURPLUS METALS, INC. :
DEBTOR(S) : BANKRUPTCY NO. 08-16450 SR

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**Introduction**.

Before the Court is the motion ("Motion") of Albert Kauffman (the "Movant") who is a principal of Keystone Surplus Metals, Inc. ("Keystone"), requesting the allowance of a Chapter 11 administrative claim in the amount of $215,969.26. Kauffman contends that he made post-petition loans to Keystone in the ordinary course of its business and that he should be granted an administrative claim for this amount. The United States Trustee objects to the request. Following a hearing, the Court took this matter under advisement. For the reasons which follow, the Motion shall be denied.

**Factual Background**

On October 3, 2008, Keystone filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. The Movant signed the Petition as the President of Keystone. According to the List of Equity Holders for the Debtor, the Movant is a fifty percent (50%) shareholder of Keystone. *See also Transcript, dated October 26, 2010 ("Tr."), at 44 (Movant testified that he was a "50 percent shareholder and the President" of the Debtor).*

On the same day that Keystone filed its bankruptcy case, it also filed a motion for the

interim use of cash collateral. In the motion, Keystone explained that, prior to the filing of its Chapter 11 case, it had borrowed approximately $5,042,500.00 from Wachovia and that Wachovia asserted a security interest "on all of the debtor's machinery and equipment" and "in debtor's inventory, chattel paper, accounts, equipment, machinery, furniture, fixtures, and general intangibles and proceeds." *Debtor's Motion for Interim Use of Cash Collateral, Docket Entry No. 3.* On October 8, 2009, an Order was entered approving a Stipulation for the Use of Cash Collateral and Providing for Adequate Protection by and between Wachovia and the Debtor. Thereafter, eight additional Orders were entered approving stipulations between Wachovia and Keystone for the continued use of cash collateral and adequate protection. *See Docket Entry No. 234 (Stipulation for the Ninth Extension of Cash Collateral and Adequate Protection).*

On March 22, 2010, the U.S. Trustee filed a motion to convert Keystone's Chapter 11 case to a Chapter 7 case because Keystone had failed to: (1) file its operating report for the month of February of 2010; and (2) pay any quarterly fees to the United States Trustee for the fourth quarter of 2009. *Docket Entry No. 249.* On March 30, 2010, the Court entered an Order granting the Trustee's motion. *Docket Entry No. 256.* Shortly thereafter, a Chapter 7 Trustee was appointed. *Docket Entry No. 257.*

On May 14, 2010, the Chapter 7 Trustee filed a Motion to Sell Debtor's Business Assets Free and Clear of Interests, Claims and Encumbrances Pursuant to 11 U.S.C. § 363. *Docket Entry No. 277.* In the Motion, the Trustee explained that: "[w]hile Wachovia holds a lien against the Assets, it has agreed to pay from the Net Proceeds[1] of the auction the allowed administrative

---

[1] "Net Proceeds" was defined in the motion as "the gross sales proceeds less the costs, expenses, and commissions set forth in the Agreement with Wm. F. Comly & Son, Inc." *Motion*
(continued...)

2

expenses of the Trustee and his counsel plus an additional five percent of the Net Proceeds to be paid to unsecured creditors." *Motion to Sell Debtor's Business Assets Free and Clear of Interests, Claims and Encumbrances Pursuant to 11 U.S.C. § 363, at ¶ 6.*

On July 13, 2010, the Chapter 7 Trustee filed a Notice of Change from No-Asset to Asset Case and a Request to the Clerk to fix a Bar Date to File Claims against the Estate. *Docket Entry No. 327.* A notice was thereafter issued setting October 15, 2010 as the last day for filing claims. *Docket Entry No. 328.* On September 28, 2010, the Movant filed his motion seeking the allowance of an administrative claim. *Docket Entry No. 339.* According to the Motion, the Movant allegedly loaned Keystone $215,969.26 by issuing the following checks:

| Check Number | Check Amount | Check Date |
|---|---|---|
| 133 | $75,000.00 | 9/9/09 |
| 134 | $40,969.26 | 10/5/09 |
| 135 | $40,000.00 | 10/26/09 |
| 129 | $60,000.00 | 1/26/10 |

*See Motion ¶ 15 & Exhibit B to the Motion.*

The Trustee subsequently filed her objection ("Objection") to the Motion. *See United States Trustee's Objection to Motion Requesting Allowance of Chapter 11 Administrative Claim of Albert Kauffman, Docket Entry No. 342.* In the Objection, the Trustee asserts that the Movant is not entitled to an administrative claim because: (1) he made post-petition loans to Keystone without obtaining prior court approval; and (2) he is seeking reimbursement for funds which he expended post-petition in order to protect his own interests and/or interests of insiders. *Objection ¶8.*

---

[1](...continued)
*to Sell Debtor's Business Assets Free and Clear of Interests, Claims and Encumbrances Pursuant to 11 U.S.C. § 363, at 2 n.1.*

At the hearing on the Motion, the Movant testified that he made pre-petition loans to Keystone beginning in 2001 through 2006 for which he expected to be repaid. *Tr. at 5-10*. Movant further testified that he was repaid by Keystone for the loans as funds became available and that he, thereafter, "re-loaned" the money back to Keystone. *Id.* He also testified that he made pre-petition loans to Keystone in 2007 but was not repaid for all of them because Keystone had a problem with a major supplier and ended up in financial difficulty. *Id. at 10-12*. According to the Movant, he made further pre-petition loans to Keystone in 2008 for which he was not repaid. *Id. at 12-13*. There was never any documentation of the loans, such as a promissory note or loan agreement. *Id. at 29*. On March 9, 2009, Movant filed a proof of claim, dated March 6, 2009, for $286,010.46 for "money loaned." *Claim No. 35*. The only attachment to the Proof of Claim is a bank statement from Wachovia showing the balance on a "prime equity line" as $286,010.46. *See id.*

Between October of 2008, when Keystone filed for bankruptcy, through August of 2009, the Movant made no loans to Keystone. *Tr. at 16*. However, the Movant testified that he thereafter made post-petition loans to the Keystone in the amount of $215,969.26 for which he intended to be repaid. *Tr. at 14*. These "loans" to Keystone, he claims, were made by check on the dates and in the amounts listed above. *See Movant's Exhibit 9 (copies of checks)*. The first "loan" was made on September 9, 2009. *Id. at 16*. The Movant submitted no written agreements or documentation regarding any of the "loans" other than his checks. While the check, dated October 5, 2009 (check #134), lists "loan" on the bottom, none of the other checks bear this description. *See Movant's Exhibit 9 (copies of the checks)*. The Movant explained that he made these post-petition "loans" because Keystone was a "viable business" and he expected it to have

a consensual plan of reorganization. *Tr. at 14-15.* However, he also testified that Keystone "made multiple attempts" to resolve issues with the unsecured creditors' committee but that the committee continued to reject the offers which "ultimately lead to Keystone going through all [of] its cash and eventually Keystone had to convert to a Chapter 7." *Tr. at 15.*

Moreover, despite the Movant's testimony regarding his alleged "loans," Keystone's operating reports for September, 2009, October of 2009, November of 2009 and January of 2010, which the Movant signed as the "Authorized Individual" on behalf of the Keystone, do not list <u>any</u> loans or advances from the Movant. *Id. at 17-20; see also Exhibits T-1 through T-4.* The Movant testified that they were probably listed as accounts payable on the operating reports. *Tr. at 17.* Notably, his counsel made the same representation. *Tr. at 35.* However, the "accounts payable" entries on the relevant operating reports do not list any loans from the Movant.[2] *See Exhibits T-1 through T-4.* Moreover, the "loans" are not included in any line item under "receipts" on the operating reports. *See id.* Rather, the line item for "accounts receivable" matches up, within $9,000 or less, with the line item for "total receipts" on each of the four relevant operating reports. *See id.*

The Movant testified that he had "no idea" whether owners in businesses like Keystone make loans like he did to their businesses. *Tr. at 26.* Elaborating on this answer, the Movant testified:

> I can just speak from the business that I was in prior to Keystone.

---

[2] The amounts listed as "accounts payable" in the relevant Monthly Operating Reports are the following: (i) $20,416 is listed for September of 2009; (ii) $45,941 is listed for October of 2009; (iii) $29,256 is listed for December of 2009; and (iv) $24,080 is listed in the report for January of 2010. Obviously, these amounts bear no relationship to the amount of the "loans" which the Movant allegedly made to Keystone.

> It was a company called National Stainless. It was owned by Mr.
> Stanley Kessler. Mr. Kessler always loaned money to his business
> and would get paid back. It was standard operating procedure in
> National Stainless.

*Id. at 27.*

In the modified disclosure statement ("Disclosure Statement") and plan of reorganization ("Chapter 11 Plan") that were filed with the Court and for which Keystone was seeking approval prior to its conversion to Chapter 7, there was no repayment plan for the money that Movant contends that he loaned to Keystone. *Id. at 27. See also Keystone Surplus Metals, Inc., d/b/a Keystone Specialty Metal Inc.'s Modified Plan of Reorganization Dated 12/9/09, Docket Entry No. 195 & Keystone Surplus Metals, Inc. d/b/a/ Keystone Specialty Metals, Inc.'s Modified Disclosure Statement Dated 12/9/09, Docket Entry No. 196.* Indeed, Keystone's Disclosure Statement specifically addresses Keystone's administrative expenses and provides that Keystone had no administrative expenses "arising in the ordinary course of business after the petition date." *Disclosure Statement at p. 7.* Similarly, Keystone's Chapter 11 Plan makes no reference *whatsoever* to any loans from the Movant to Keystone. *See Chapter 11 Plan.* The Movant also admitted that he never told Keystone's Chapter 11 counsel about the "loans." *Tr. at 31.*

When questioned on cross-examination, the Movant admitted that he was also an owner or participant in the entity known as "FNK" which owned the real estate where Keystone operated and that he had personally guaranteed the mortgage which existed on the real estate. *Tr. at 35.* He explained that Keystone's monthly rental payment to FNK for "a little bit over $10,000" was used by FNK to pay for the property. *Tr. at 26.*

**Discussion**.

Movant contends that he should be allowed an administrative expense in the amount of $215,969.26 for his post-petition advances to Keystone based on 11 U.S.C. § 364(a). As the party seeking the allowance of an administrative expense, Movant bears the burden of proof in this matter. *In re Massetti*, 95 B.R. 360, 363 (Bankr. E.D. Pa. 1989); see also in re *Blessing Industries, Inc.*, 263 B.R. 268, 272 (Bankr. N.D. Iowa 2001). Moreover, since Movant, as the President of Keystone, is an insider as that term is defined in 11 U.S.C. § 101(31), Movant's alleged "loans" to the Debtor must be carefully scrutinized. *See Arney v. MRI Tanglewood Rental Investments, Inc. (In re The Alpha Corporation of Virginia)*, 979 F.2d 847, 1992 WL 337325, at *4 (4th Cir. January 5, 1993) (as amended) (table, text on Westlaw); In re Concrete Products, Inc., 208 B.R. 1000, 1006 (Bankr. S.D. Ga. 1996).

Section 364(a) states:

> (a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a). Section§ 364(a) "allows a debtor-in-possession operating the business of the debtor under § 1108 to incur unsecured debt in the ordinary course of business and provides that debt so incurred shall be given priority as an administrative expense under § 503(b)(1)." *Rajala v. Langer (In re Lodge America, Inc).*, 259 B.R. 728, 731 (D. Kansas 2001). Extensions of credit which fit within the scope of § 364(a), unlike §364(b), can occur without notice and prior

court approval. *In re Massetti*, 95 B.R. at 363.

In determining whether a debt has been incurred in the ordinary course of business, courts employ a two prong test which is comprised of: (i) a "vertical" dimension; and (ii) a "horizontal" dimension. *See In re Roth American, Inc.*, 975 F.2d 949, 952-53 (3d Cir. 1992); *United States Trustee v. Lombardozzi (In re RJC Industries, Inc.)*, 369 B.R. 845, 851 (Bankr. M.D. Pa. 2006). The "vertical" dimension inquiry "focuses on the creditor's reasonable expectations." *Id.* The Third Circuit explained this inquiry as follows:

> The inquiry deemed vertical . . . analyzes the transactions "'from the vantage point of a hypothetical creditor and [the inquiry is] whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to issue credit.'" Benjamin Weintraub & Alan N. Resnick, The Meaning of the "Ordinary Course of Business" Under the Bankruptcy Code - Vertical and Horizontal Analysis, 19 UCC L.J. 364, 365 (1987) *(quoting* In re Johns-Mansville Corp*., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).* Under this test, "[t]he touchstone of 'ordinariness' is ... the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." James A. Phillips, 29 B.R. at 394. The primary focus thus is on the debtor's pre-petition business practices and conduct, although a court must also "consider the changing circumstances inherent in the hypothetical creditor's expectations." Weintraub & Resnick, 19 UCC L.J. at 366.

*In re Roth American, Inc., 975 F.2d at 953.* The "horizontal" dimension inquiry, on the other hand, focuses on whether "the transaction is the sort commonly undertaken by companies in that industry." *Id.*

The Vertical Dimension Inquiry

According to Movant's testimony, he made pre-petition loans to Keystone in 2001 through 2006 with the expectation that he would be repaid for the loans. *Tr. at 5-10.* He further

testified that he was repaid for the loans as funds "became available" and that he would thereafter re-loan the money to Keystone. *Tr. at 10.* However, he also testified that he made loans to Keystone in 2007 for which he was not fully repaid because of the financial difficulties that Keystone was having and that he was not repaid for the loans he made to the company in 2008. *Tr. at 10-13.* Consequently, it seems unreasonable and incredulous for Movant to contend that he had an expectation that his post-petition "loans" to Keystone would be repaid as debts incurred in the ordinary course of business. Indeed, documentary evidence demonstrates that Movant did <u>not</u> have such an expectation.

Keystone's operating reports, which the Movant signed under penalty of perjury, do not contain any reference to, or mention, the Debtor's alleged "loans." As the "authorized" individual signing Keystone's operating reports, the Movant had an obligation to Keystone's creditors and the U.S. Trustee to ensure that these reports accurately portrayed Keystone's financial condition. To make "loans" to the Debtor and not to disclose them on the operating reports borders on fraud. Furthermore, Keystone's Disclosure Statement and Chapter 11 Plan do not mention the existence of such loans, let alone the repayment of them. The undisputed absence of any mention of the alleged loans from Movant to Keystone on the operating reports, in its Disclosure Statement and or in its Chapter 11 Plan indicates to the Court that the Movant's advances were not loans in the ordinary course of business. Only after Keystone's bankruptcy case was converted to a Chapter 7 did Movant characterize his advances as "loans" to be repaid. *See In re Ockerlund Construction Company*, 308 B.R. 325, 328 (Bankr. N.D. Ill. 2004) (reasoning that "advance" which was only asserted to be a post-petition extension of credit "after the fact" was a problem with characterizing it as a loan obtained in the ordinary course of the

9

debtor's business under § 364(a)).

Furthermore, Movant made no advances to Keystone for ten months after it filed for bankruptcy. Consequently, while Movant may have made regular loans to Keystone before it filed for bankruptcy, he ceased doing so, in the ordinary course of the company's business, after it filed for bankruptcy. The "reasonable expectation," therefore, of Keystone's creditors by the fall of 2009 was that such "loans" were not being made and that Movant would not be standing in line ahead of them for payment of an administrative expense. Therefore, the Court concludes that Movant has failed to satisfy the "vertical" dimension inquiry for §364(a) transactions.

The Horizontal Dimension Inquiry

The Movant offered <u>no</u> evidence to satisfy the horizontal dimension inquiry. He admitted that he had "no idea" whether businesses similar to Keystone receive loans from their owners. Moreover, while he commented upon his experience at the company where he worked prior to Keystone, there was no evidence admitted regarding any similarity between the two businesses. As the party seeking to obtain administrative expense priority for his "loans," it was incumbent upon the Movant to offer such evidence. *In re Massetti, 95 B.R. 360, 363 (Bankr. E.D. Pa. 1989)* (ruling that movants who seek administrative expense priority under §364(a) had burden of proving that "real estate partnerships in general .... typically borrow funds from their general partners to pay their operating expenses."). Consequently, the Movant has also failed to satisfy the "horizontal" inquiry for determining whether a debt has been incurred in the ordinary course of business.

**Summary**.

Movant has failed to establish that he made loans to Keystone in the ordinary course of

10

business under § 364(a). Accordingly, his Motion shall be denied. An Order to that effect shall be entered.

By the Court:

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: December 7, 2010